**Larry CASSIDY, Plaintiff–Appellant,**

v.

**STATE OF HAWAII; DEPARTMENT OF TRANSPORTATION, HARBORS DIVISION; Ian Birnie, District Manager, Harbors Division, Port of Hilo, Defendants–Appellees.**

No. 89–15600.

United States Court of Appeals, Ninth Circuit.

Submitted June 8, 1990.*

Memorandum Filed June 26, 1990.

Decided Oct. 1, 1990.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth

Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Steven A. Kornberg, Law Offices of James C. Clay, Kailua–Kona, Hawaii, for plaintiff-appellant.

Lane T. Ishida, Deputy Atty. Gen., Honolulu, Hawaii, for defendants-appellees.

Before SNEED, FARRIS and FERNANDEZ, Circuit Judges.

## ORDER

The memorandum disposition filed June 26, 1990, is redesignated as an authored opinion by Judge Farris per the attached Opinion.

## OPINION

FARRIS, Circuit Judge:

Larry Cassidy appeals the district court's dismissal of his complaint against the State of Hawaii, Department of Transportation, Harbors Division, and Ian Birnie, the District Manager of the Port of Hilo. Cassidy brought a section 1983 suit alleging that the state deprived him of his property interest in a mooring permit without a pre-deprivation hearing, in violation of his constitutional due process rights. The district court held that suit against the state was barred by the eleventh amendment. The district court also held that the suit against Birnie failed because Cassidy's own negligence caused the deprivation, so no hearing was necessary. Cassidy appeals only the second ruling. We affirm.

This dispute centers on Cassidy's rights to a mooring slip at Honokohau Small Boat Harbor, Hawaii, where he had moored his recreational vessel since 1979. The State of Hawaii, Department of Transportation, Harbors Division administered the facility, and Ian Birnie was the harbor master and state official in charge at Honokohau. Cassidy's mooring permit allowed him to

lease a slip at Honokohau for a renewable one year period. Haw.Admin.Rules § 19–62–5.

The State has an elaborate set of administrative rules governing the issuance and use of mooring permits. The State revoked Cassidy's permit for violating the continuous occupancy rule, which provides, in pertinent part:

> (a) A regular mooring permit and related use permits issued to a vessel shall automatically expire if a vessel is absent from its assigned berth for more than fourteen days, unless the holder of the permit or permits submits an application prior to the departure on a form furnished by the department enumerating the permits the holder wishes to reserve during the holder's absence. If this is done, the application *may* be approved, by the department, subject to subsection (b). . . .
>
> (b) Nothing contained in this section shall be construed as a waiver of the right of the department to:
>
>> (1) Deny the application to retain the berth.

Haw.Admin.Rules § 19–62–11 (emphasis added). An exception to this procedure is made for emergencies, in which case "the holder of the regular mooring permit may apply to the department by letter, telephone, or any other means of communication and be permitted to retain the holder's permit to use the assigned berth . . . provided that the holder applies not later than the *fourteenth day following departure* from the assigned berth." *Id.* at § 19–62–11(d).

Cassidy did not submit the application required by section 19–62–11 when he left for a trip to Oahu on Monday, July 20, 1987. On July 23, 1987, he obtained a temporary mooring permit at Ala Wai Small Boat Harbor, in Oahu, which expired on July 25, 1987, and was extended until August 12, 1987. During the fourteen days following Cassidy's departure from the berth at Honokohau, he did not contact the Harbor Manager's office with an oral request for extension, as provided as an emergency procedure under Haw.Admin. Rules § 19–62–11(d). The fourteen days allowed by section 19–62–11 expired on August 3, 1987. One week later, on August 11, 1987, Birnie notified Cassidy by letter that his mooring permit was revoked under section 19–62–11.

Cassidy did not return to his slip at Honokohau until August 24, 1987, five weeks after he departed. His subsequent use of the slip subjected him to criminal citations and fines. Cassidy admits that his vessel was absent from the slip for more than fourteen days. He argues only that he gave the Harbors Division constructive notice of his plans and thus satisfied section 19–62–11.

■ Cassidy claims that he has a property interest in the continued use of the slip which can be terminated only after notice and a hearing. In order to prove a due process violation, Cassidy must first demonstrate that he has a protected property interest in the mooring permit. Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. . . ." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Here, the state regulations provide that Cassidy could rent his slip for up to one year, revocable only in case of a violation of the rules. *See* Haw.Admin.Rules § 19–62–6.

The regulations place a significant caveat on that right, however. The permit *automatically* expires if the permit-holder leaves his slip for more than fourteen days. To retain the slip the permit-holder must notify the Department of the duration of his absence before the fourteen day period has expired and then reapply for the slip. The permit-holder has no statutory right to the slip once he has vacated the space for more than fourteen days. State law accords Cassidy only the right to continuously occupy the slip, with an absence of no more than fourteen days at a time, for up to one year. Cassidy's permit, and thus his property interest, expired when he left his slip for more than fourteen days, an event

he does not deny.[1]

At issue is whether State law creates any expectation of permit renewal after a fourteen day absence, in accordance with section 19–62–11. Cassidy asserts that the Harbors Division generally renews permits under section 19–62–11, and that this custom created an understanding that would justify a legal entitlement to have his permit renewed. *See Perry v. Sinderman*, 408 U.S. 593, 602–03, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972) (policies and practices may create legitimate claim of entitlement).

Not all customs create a property right, however. "A constitutional entitlement cannot 'be created—as if by estoppel—merely because a wholly and *expressly* discretionary state privilege has been granted generously in the past.'" *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465, 101 S.Ct. 2460, 2465, 69 L.Ed.2d 158 (1981) (emphasis in original), *quoting Leis v. Flynt*, 439 U.S. 438, 444 n. 5, 99 S.Ct. 698, n. 5, 58 L.Ed.2d 717 (1979) (per curiam); *see also Punikaia v. Clark*, 720 F.2d 564, 570 (9th Cir.1983) (state's continuous provision of care at nursing home for 30 years did not create a property right in continued care for residents), *cert. denied*, 469 U.S. 816, 105 S.Ct. 83, 83 L.Ed.2d 30 (1984). The state expressly disavowed any intention to create such a right to renewal and Cassidy has shown no more than a unilateral expectation of renewal.

AFFIRMED.

---

**1.** A different question would be presented if Cassidy alleged that his vessel was not in fact absent for more than fourteen days.