**William Robert FIELDER, Plaintiff,**

v.

**Howard B. GEHRING; Stephen Thompson; and Nancy Murphy, Defendants.**

**Civil No. 99–00350 SOM/BMK.**

United States District Court,
D. Hawaii.

July 18, 2000.

· Jack F. Schweigert, Michael G.M. Ostendorp, Honolulu, HI, for plaintiff.

Pamela Keiko Matsukawa, Dept of the Attorney General, Honolulu, HI, for defendants.

ORDER DISMISSING OFFICIAL CAPACITY AND EQUAL PROTECTION CLAIMS; ORDER DENYING SUMMARY JUDGMENT AS TO DUE PROCESS CLAIMS IN THE DEFENDANTS' INDIVIDUAL CAPACITIES

MOLLWAY, District Judge.

## I. INTRODUCTION.

On May 14, 1999, Plaintiff William Robert Fielder ("Fielder") filed a Complaint. The Complaint was amended on October

20. Fielder claims that Howard B. Gehring ("Gehring"),[1] Stephen Thompson ("Thompson"),[2] and Nancy Murphy ("Murphy")[3] (collectively "Defendants"), in their individual and official capacities, violated his constitutional rights under the Due Process and Equal Protection clauses by not issuing a mooring permit to him. Defendants have moved for judgment on the pleadings, or, in the alternative, for summary judgment.

To the extent Fielder brings his claims against the Defendants in their official capacities, Defendants' motion is granted. Defendants have Eleventh Amendment immunity from those claims. Accordingly, the claims against Defendants in their official capacities are dismissed pursuant to Rule 12(b)(1).[4]

On Fielder's claims that Defendants, in their individual capacities, violated the Equal Protection clause of the United States Constitution, Defendants are awarded judgment on the pleadings pursuant to Rule 12(c). Fielder has not alleged that he was treated differently from similarly situated persons.

This court considers Defendants' motion regarding Fielder's Due Process claims against Defendants in their individual capacities as having been brought under Rule 56(c) because the motion requires examination of evidence outside the plead-

ings. Defendants' motion is denied with respect to those claims because there is an issue of fact as to whether Fielder was entitled to the mooring permit that he sought. If Fielder was entitled to the mooring permit, he had a property interest protected by the Due Process clause of the United States Constitution.

## II. STANDARDS.

### A. Motion to Dismiss Standard.

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may either attack the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction, or may attack the existence of subject matter jurisdiction in fact. *Thornhill Publ'g Co., Inc. v. General Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir.1979). When the motion to dismiss attacks the allegations of the complaint as insufficient to confer subject matter jurisdiction, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.[5] *Federation of African Amer. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir.1996). When the motion to dismiss is a factual attack on subject matter jurisdiction, however, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself

1. Gehring is the acting administrator of the State of Hawaii, Department of Land and Natural Resources, Division of Boating and Ocean Recreation ("DLNR–DOBOR"). Affidavit of Howard B. Gehring (May 25, 2000).

2. Thompson is the Oahu District Manager of DLNR–DOBOR. Affidavit of Stephen Thompson (May 24, 2000) ¶ 1. Gehring is Thompson's supervisor. *Id.*

3. Murphy is the "harbormaster" at the Keehi Small Boat Harbor. Affidavit of Nancy Murphy (May 24, 2000) ¶ 1.

4. Although Defendants' motion is brought under Rules 12(c) and 56(c), this court reviews claims against the Defendants in their official capacities under Rule 12(b)(1) of the Federal Rules of Civil Procedure. This court lacks jurisdiction over those claims given Defen-

dants' Eleventh Amendment immunity. *In re Jackson*, 184 F.3d 1046, 1048 (9th Cir.1999) ("Eleventh Amendment sovereign immunity limits the jurisdiction of the federal courts and can be raised by a party at any time during judicial proceedings or by the court sua sponte"); *see also B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir.1999) ("federal courts are required sua sponte to examine jurisdictional issues").

5. Fielder has the burden of proving that jurisdiction does in fact exist. *Thornhill*, 594 F.2d at 733. Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss. *In Re Syntex Corp. Securities Litigation*, 95 F.3d 922, 926 (9th Cir.1996).

the existence of subject matter jurisdiction in fact. *Thornhill*, 594 F.2d at 733. The present motion attacks the allegations of Fielder's Complaint as being insufficient to confer upon the court subject matter jurisdiction.

### B. *Judgement on the Pleadings Standard.*

Rule 12(c) states:

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

The standard governing a Rule 12(c) motion for judgment on the pleadings is essentially the same as that governing a Rule 12(b)(6) motion. The motion will be granted if, accepting as true all material allegations contained in the nonmoving party's pleadings, the moving party is entitled to judgment as a matter of law. *Lake Tahoe Watercraft Recreation Association v. Tahoe Regional Planning Agency*, 24 F.Supp.2d 1062, 1066 (E.D.Cal.1998). For a Rule 12(c) motion, the allegations of the nonmoving party must be accepted as true, while any allegations made by the nonmoving party that have been denied are assumed to be false. *Hal Roach Studios v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir.1989). Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law. *Id.* However, judgment on the pleadings is improper when the district court goes beyond the pleadings to resolve an issue; such a proceeding must properly be treated as a motion for summary judgment. *Id.*

### C. *Summary Judgment Standard.*

Summary judgment shall be granted when:

the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *see Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Summary judgment must be granted against a party who fails to demonstrate facts to establish what will be an essential element at trial. *Id.* at 322, 106 S.Ct. 2548. The burden initially lies with the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (footnote omitted). The nonmoving party may not rely on the mere allegations in the pleadings and instead must set forth "specific facts showing that there is a genuine issue for trial." *Id.* At least some " 'significant probative evidence tending to support the complaint' " must be produced. *Id.* (*quoting First Nat. Bank v. Cities Serv. Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569, *reh'g denied*, 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968)); *Addisu*, 198 F.3d

at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact"). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987) (*citing Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). *Accord Addisu*, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion").

However, when "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *T.W. Elec. Services*, 809 F.2d at 631. All evidence and inferences must be construed in the light most favorable to the nonmoving party. *Id.* Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. *Id.*

## III. BACKGROUND FACTS.

In April 1999, Fielder sailed his vessel, the "Meander," into the Keehi Small Boat Harbor ("Keehi").[6] Complaint ¶ 8 (indicating that Fielder sailed his vessel into Keehi on April 10, 1999); Declaration of William Robert Fielder (June 29, 2000) ¶ 2 (indicating that Fielder sailed his vessel into Keehi on April 12, 1999); Affidavit of Nancy Murphy (May 24, 2000) ¶ 2

(indicating that Fielder sailed the Meander into Keehi on April 12, 1999).[7] On April 13, 1999, Fielder went to the DLNR–DOBOR's office located at Keehi to obtain a mooring permit. Fielder Decl. ¶ 3; Murphy Aff ¶ 3. Fielder was not issued a permit at that time because Murphy had reservations regarding whether the Meander's bell satisfied Coast Guard requirements. Fielder Decl. ¶¶ 3, 5; Murphy Aff. ¶ 4.

Fielder obtained a proper bell and passed inspection on April 16, 1999. Fielder Decl. ¶¶, 5–6; Murphy Aff. ¶ 5. On April 22, Fielder was notified that the paperwork for his mooring permit was completed and that he would have to pay $240.14 to obtain that permit. Affidavit of Debra Dudoit (May 24, 2000) ¶ 2; Letter from Debra Dudoit to William R. Fielder (dated April 21, 1999, but apparently mailed April 22, 1999). Fielder also says that Murphy told him on April 24 that, although his application for a mooring permit had been approved, he still had to pay a permit fee as well as the mooring fee for the next month. Fielder Decl. ¶¶ 8–10.

Fielder says that he objected to having to pay the permit fee charged to nonresidents as well as the next month's mooring fee. Fielder Decl. ¶¶ 8, 10. He says that he did not have enough money to pay the fees on April 24, but offered to make a partial payment and return with all outstanding fees on April 27, 1999. Fielder Decl. ¶ 10.

Fielder claims that, when he returned to the DLNR–DOBOR office on April 27, 1999, with the money to cover all the fees, Murphy "outright refused to take any money and told [him], 'you will not be issued a permit in this harbor, period.'" Fielder Decl. ¶ 11. Fielder claims to have been told that Thompson had ordered

---

6. Keehi is a small boat harbor under the jurisdiction of DLNR–DOBOR. Affidavit of Nancy Murphy (May 24, 2000) ¶ 1. *See generally* Haw.Rev.Stat. ch. 200; Haw. Admin. Rule chs. 13–230 and 13–231.

7. The Complaint also refers to the boat as being named the "Meanderer," whereas Fielder's declaration, as well as the Application for Boat Harbor Agreement and Use Permit, which is attached to the Motion as Exhibit A, calls it the "Meander."

DLNR–DOBOR staff not to issue him a permit for any harbor. *Id.* ¶ 15. Fielder says that Murphy told him that the reason he would not receive any permit was his "behavior." *Id.* ¶ 11.

Murphy, on the other hand, says that she expected Fielder to have the fees to pay for the mooring permit on April 27. Murphy Aff. ¶ 8. She says that she "would have been able to issue a mooring permit for the 'Meander' to him that day." *Id.* She says that, on April 27, 1999, "Fielder did not offer to pay for any of the fees required to be paid before a mooring permit is issued." *Id.* ¶ 10. Murphy claims that "Fielder left the Keehi SBH office without a mooring permit because he did not pay for the fees that are required by administrative rule to be paid before a mooring permit may be issued." *Id.* ¶ 11.

On or about May 10, 1999, Fielder verbally asked Thompson for an administrative hearing to be held regarding the mooring permit he had been seeking for Keehi. Thompson Aff. ¶ 3; Gehring Aff. ¶ 2. Thompson relayed that request to Gehring, who sent Fielder's attorney a letter stating that the mooring permit had not been issued to Fielder because he had refused to pay the necessary fees. *Id.* ¶ 3.

On July 9, 1999, a mooring permit was issued to Fielder after he had completed the proper paperwork and paid the necessary fees. Murphy Aff. ¶ 14.

## IV. *ANALYSIS.*

### A. *The Eleventh Amendment Bars Fielder's Claims Against the Defendants in Their Official Capacities.*

Under the Eleventh Amendment, a state is immune from suit brought in federal court by its own citizens or citizens of other states. *Papasan v. Allain,* 478 U.S. 265, 275, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 99, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Federal court actions against agencies or instrumentalities of a state are also barred by the Eleventh Amendment. *Shaw v. State of Cal. Dept. of Alcoholic Beverage Control,* 788 F.2d 600, 603 (9th Cir.1986). A suit against state officials, in their official capacities, is the same as a suit against the state itself and therefore is subject to the Eleventh Amendment. *Kentucky v. Graham,* 473 U.S. 159, 166–67, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

■ Unless the state unequivocally waives sovereign immunity or Congress exercises its power under the Fourteenth Amendment to override the immunity, the state, its agencies, and its officials (acting in their official capacities) are immune from suit under the Eleventh Amendment. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Pennhurst,* 465 U.S. at 99, 104 S.Ct. 900.

Fielder complains that the mooring permit was not issued as required by state law. He says that, when the permit was not issued, a due process violation actionable under 42 U.S.C. § 1983 occurred. Section 1983, however, does not apply to Fielder's claim that the Defendants violated that section in their official capacities. *Will,* 491 U.S. at 71, 109 S.Ct. 2304 (neither a state nor its officials acting in their official capacities are considered "persons" for purposes of section 1983). Congress has not exercised its authority to override Hawaii's Eleventh Amendment immunity from section 1983 suits against state officials acting in their official capacities.[8]

---

8. Although there is a narrow exception to Eleventh Amendment immunity that allows suits against a state for prospective injunctive relief, that exception only applies to injunctive relief challenging the constitutionality of a state official's actions. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 104–107, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *see Dover Elevator Co. v. Arkansas State Univ.,* 64 F.3d 442, 447 (8th Cir.1995) (the "exception to the Eleventh Amendment bar is limited, however, to injunctive relief granted on the basis of federal law"); *State Employees' Assoc. of New Hampshire, Inc. v. Lang,* 682

Fielder correctly conceded at the hearing that his official capacity claims are barred by the Eleventh Amendment.

■] Accordingly, the court, on Eleventh Amendment immunity grounds, dismisses Fielder's claims to the extent they are asserted against the Defendants in their official capacities. This court lacks subject matter jurisdiction over those claims. *Blue v. Widnall,* 162 F.3d 541, 544 (9th Cir.1998) ("Whether the government waives its sovereign immunity is a question of subject matter jurisdiction") (citing *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)); *Charley's Taxi Radio Dispatch v. SIDA of Hawaii,* 810 F.2d 869, 873 n. 2 (9th Cir. 1987) ("Like a jurisdictional bar and unlike a traditional immunity, however, the effect of the Eleventh Amendment must be considered *sua sponte* by federal courts"); *but see Hill v. Blind Indus. and Servs. of Maryland,* 179 F.3d 754, 760, *amended,* 201 F.3d 1186 (9th Cir.2000) (noting that Eleventh Amendment immunity is not to be analyzed under the rubric of subject matter jurisdiction because it is waivable).

### B. *Equal Protection.*

■ In his Amended Complaint, Fielder alleges that the Equal Protection clause of the United States Constitution was violated. Amended Complaint (Oct. 20, 1999) ¶¶ 9, 13. The Equal Protection clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike. *High Tech Gays v. Defense Indus. Sec. Clearance Office,* 895 F.2d 563, 570–71, *reh'g denied,* 909 F.2d 375 (9th Cir.1990). This case involves an alleged refusal to grant Fielder a mooring permit. There is no allegation that Field-

er was treated differently from anyone else. Because he has failed to properly allege a violation of the Equal Protection clause, and because Fielder stated at the hearing that he was "abandoning" his claims under the Equal Protection clause, Fielder's Equal Protection clause claims are dismissed.

### C. *Due Process.*

■] The procedural due process guarantees of the Fourteenth Amendment apply only when constitutionally protected liberty or property interests are at stake.[9] *Soranno's Gasco, Inc. v. Morgan,* 874 F.2d 1310, 1316 (9th Cir.1989) (holding that the goodwill of a California business is a property interest entitled to the protection of the Fourteenth Amendment). In order to prove a Due Process clause violation, Fielder must first demonstrate that he has a protected property interest in the mooring permit. *Cassidy v. Hawaii,* 915 F.2d 528, 530 (9th Cir.1990). This court looks to independent sources, such as state law, to define the dimensions of protected property interests. *Cassidy,* 915 F.2d at 530; *Soranno's,* 874 F.2d at 1316.

■■ In the present case, Fielder asserts that he had a property interest in the mooring permit he sought for Keehi. When he did not receive that mooring permit, he says that the Due Process clause was violated. *See* Amended Complaint ¶¶ 9–13. Under Hawaii law, such mooring permits are considered protected property interests. *Brown v. Thompson,* 91 Hawai'i 1, 11, 979 P.2d 586, 596 (holding that a property interest arises when a benefit is conferred by a statute; stating that "[i]nasmuch as the 'benefit' of obtaining permits for state small boat harbors is granted by statute, *see* HRS § 200–10 (1993), a mooring or live-aboard permit

---

F.Supp. 660, 664 (D.N.H.1988) ("Citizens may sue for injunctive relief against a state official in federal court for a violation of federal constitutional law"). The exception does not apply to this case because Fielder is seeking damages, not injunctive relief.

**9.** The Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law."

constitutes a constitutionally protected property interest"), *cert. denied,* — U.S. ——, 120 S.Ct. 511, 145 L.Ed.2d 395 (1999). However, before Fielder can claim that he had such a property interest, he must demonstrate that he was entitled to the mooring permit under Hawaii law. *See Cassidy,* 915 F.2d at 530–31 (stating that, when a permit-holder has no statutory right to a mooring permit, that person does not have a property right in that permit).

■ In the present case, an issue of fact exists as to whether Fielder was entitled to the permit. Haw. Admin. R. § 13–231–3 authorizes the DLNR–DOBOR to issue mooring permits. Under Haw. Admin. R. § 13–231–82, an application for a mooring permit "shall be rejected if . . . [t]he application fee is not paid at the time the application is made." [10] Fielder claims that, even when he had the money to pay the mooring permit fee, Murphy "outright refused to take any money and told [him], 'you will not be issued a permit in this harbor, period.'" Fielder Decl. ¶ 11. Murphy, on the other hand, says that Fielder did not receive the mooring permit "because he did not pay for the fees that are required by administrative rule to be paid before a mooring permit may be issued." Murphy Aff. ¶ 11. Accordingly, an issue of fact exists that prevents this court

from determining whether Fielder had a property interest in the mooring permit protected by the Due Process clause.[11]

■ Defendants argue that, even assuming Fielder was willing to pay the permit fee, he nevertheless did not have a legitimate expectation of receiving that permit because they had the discretion to issue or deny the permit. *See Erdelyi v. O'Brien,* 680 F.2d 61, 63 (9th Cir.1982) ("Where state law gives the issuing authority broad discretion to grant or deny license applications in a closely regulated field, initial applicants do not have a property right in such licenses protected by the Fourteenth Amendment"). Initially, this argument must be disregarded because it was raised for the first time in the Reply.[12] *See* Local Rule 7.4 ("Any arguments raised for the first time in the reply shall be disregarded"). Even if this court were to consider the argument, it would not support a grant of summary judgment. If, as they assert, Defendants had discretion to grant or deny the mooring permit, they would have abused that discretion if they refused to allow Fielder to pay those fees when he was allegedly ready, willing, and able to do so, and then denied him a permit on the alleged ground that he had failed to pay the required fees.[13] Moreover, as demonstrated by Exhibit C to the Motion, Defendants themselves appear to

**10.** The court makes no finding as to whether any of the other exceptions in section 13–231–82 applies in this case.

**11.** Because an issue of fact exists that prevents this court from determining whether Fielder has a Due Process claim, Defendants' arguments that Fielder has no federal claim and that he lacks standing to bring the nonexistent claim are premature.

**12.** The argument has not been fully briefed to this court. For example, the court has not been completely briefed on the statutory and regulatory framework that governs the issuance of mooring permits. The parties have also failed to develop arguments regarding the conditions that would justify a refusal to issue a mooring permit. By Defendants' admission, they do not have unfettered discretion. At the hearing on the present motion they conceded, for example, that they lack discretion to grant permits only to their rela-

tives and not to anyone else. It would be unfair to grant summary judgment based on an argument that was not fully developed.

**13.** This means that an issue of fact also exists that would prevent summary judgment based on qualified immunity grounds. Qualified immunity bars claims against state officials in their individual capacities if their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Manhattan Beach Police Officers Ass'n, Inc. v. City of Manhattan Beach,* 881 F.2d 816, 818 (9th Cir.1989). The doctrine protects state and local officials from their exercise of poor judgment, and fails to protect only those that are "plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). The purpose of qualified immunity is to protect officials from undue interference with their duties and from

have been ready at one time to issue Fielder a mooring permit. They, like Fielder, appear to have expected that Fielder would receive a permit. If Fielder's expectation was not "unilateral," then he arguably had a legitimate expectation that a permit would issue, a circumstance that clearly suggests he had a property interest in the permit.

## V. CONCLUSION.

Defendants' motion is granted in part and denied in part. The motion is granted with respect to Fielder's claims against the Defendants in their official capacities and his Equal Protection claims. Fielder's claims against the Defendants in their official capacities are dismissed because they are barred by the Eleventh Amendment. On Fielder's claims against the Defendants in their individual capacities for violation of the Equal Protection clause, judgment on the pleadings is entered in favor of defendants because Fielder has not alleged that he was treated differently from anyone else.

The motion for summary judgment is denied with respect to Fielder's Due Process claims against the Defendants in their individual capacities. Based on the record before this court, an issue of fact exists regarding whether Fielder was entitled to the mooring permit and, accordingly, had a property right for purposes of the Due Process clause.

IT IS SO ORDERED.

potentially disabling threats of liability. *Sinaloa Lake Owners Ass'n v. City of Simi Valley,* 70 F.3d 1095, 1098 (9th Cir.1995).

The Ninth Circuit has articulated a three-step analysis to determine whether an official is entitled to qualified immunity. The court must consider: (1) whether a plaintiff has identified a specific federal statutory or constitutional right that has been allegedly violated, (2) whether that right was so clearly established as to alert a reasonable official to its parameters, and (3) whether a reasonable of-

ficial could have believed his or her conduct was lawful. *Sweaney v. Ada County, Idaho,* 119 F.3d 1385, 1388 (9th Cir.1997). In the present case, the issue of fact as to whether Defendants refused to issue Fielder a mooring permit despite his alleged offer to pay appropriate fees goes directly to whether Defendants could have believed their conduct was lawful. Accordingly, based on the current record before this court, Defendants are not entitled to summary judgment on qualified immunity grounds.