In re Marion Dale JACKSON; Patricia L. Jackson, Debtors.

California Franchise Tax Board, Appellant,

v.

Marion Dale Jackson; Patricia L. Jackson, Appellees.

No. 98–56014.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 11, 1998

Filed July 22, 1999

---

Gregory S. Price, Deputy Attorney General, San Diego, California, for the appellant.

James A. Hayes, Jr., Ashworth, Hayes & Moran, Laguna Niguel, California, for the appellees.

Before: PREGERSON, WIGGINS, and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

## I. FACTS AND PROCEEDINGS BELOW

The facts of this case are not in dispute. The Internal Revenue Service ("IRS") reassessed the Jacksons' federal income tax liabilities for the 1982, 1983, and 1989 tax years, but the Jacksons did not notify the California Franchise Tax Board ("Board") of the federal reassessments as they were required to do under California law. The Jacksons filed for bankruptcy in 1996 and the Board filed a proof of claim for unpaid state income taxes for the '82,- '83, and '89 tax years based upon the IRS reassessments. The Jacksons objected to the Board's claim and the bankruptcy court sustained the Jacksons' objection disallowing the Board's claim for state income taxes. The United States District Court for the Central District of California affirmed the bankruptcy court's order concluding that the Jacksons' California tax liabilities were discharged despite the fact that the Jacksons failed to report the IRS reassessments to the Board. The district court reasoned that the failure to report a tax reassessment did not constitute a failure to file a tax return and, therefore, the Jacksons' California tax liabilities were not excepted from the bankruptcy code's discharge provisions. The Board appeals from the district court's judgment. We have jurisdiction under 28 U.S.C. § 158(d) and affirm.

## II. DISCUSSION

### A. ELEVENTH AMENDMENT SOVEREIGN IMMUNITY

Neither party has discussed or raised the Eleventh Amendment sovereign immunity issue this case presents, but we must resolve that issue before we reach the merits of this case. *See Edelman v. Jordan,* 415 U.S. 651, 677–78, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Charley's Taxi Radio Dispatch Corp. v. SIDA of Hawaii, Inc.,* 810 F.2d 869, 873 n. 2 (9th Cir.1987). Eleventh Amendment sovereign immunity limits the jurisdiction of the federal courts and can be raised by a party at any time during judicial proceedings or by the court sua sponte. *See Edelman,* 415 U.S. at 677–78, 94 S.Ct. 1347; *Charley's Taxi Radio Dispatch Corp.,* 810 F.2d at 873 n. 2. Unlike other jurisdictional limitations, Congress can abrogate Eleventh Amendment sovereign immunity through the Fourteenth Amendment and states can waive their Eleventh Amendment sovereign immunity and consent to federal jurisdiction. *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 238, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985); *BV Engineering v. University of California, Los Angeles,* 858 F.2d 1394, 1395–96 (9th Cir.1988).

The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. Despite its narrow language, the Eleventh Amendment bars suits in federal court against a state and its agencies brought by its own citizens and citizens of other states. *Edelman*, 415 U.S. at 662–63, 94 S.Ct. 1347; *Hans v. Louisiana*, 134 U.S. 1, 9–21, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995). The State of California has not made a general waiver of its Eleventh Amendment sovereign immunity, *see Atascadero State Hospital*, 473 U.S. at 241, 105 S.Ct. 3142, and will only be deemed to have done so in this case if it has unequivocally expressed its consent to federal jurisdiction. *Actmedia, Inc. v. Stroh*, 830 F.2d 957, 963 (9th Cir.1986). The Board waived its Eleventh Amendment sovereign immunity in this case when it filed a proof of claim for unpaid state income taxes.

Section 106(b) of the Bankruptcy Code provides:

> A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

11 U.S.C. § 106(b). Section 106(b) codifies the Supreme Court's decision in *Gardner v. New Jersey*, 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504 (1947), which held that a state waives its sovereign immunity when it files a proof of claim in a bankruptcy proceeding. *Id.* at 573–74, 329 U.S. 565. The Supreme Court stated:

> It is traditional bankruptcy law that he who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences of that procedure.... When the State becomes the actor and files a claim against the fund, it waives any immunity which it otherwise might have had respecting the adjudication of the claim.

*Id.* at 573–74, 67 S.Ct. 467. The Board waived its Eleventh Amendment sovereign immunity in regard to the bankruptcy court's determination that the Jacksons' tax liability debts were dischargeable because the Board filed a proof of claim in this case for unpaid state income taxes and the Jacksons only objected to the Board's claim that their tax liability debts were non-dischargeable.

Relying on the Supreme Court's decision in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 66–72, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (Congress cannot use its Article I powers to abrogate Eleventh Amendment sovereign immunity), the Fourth Circuit has held that § 106(b) amounts to an unconstitutional attempt by Congress to abrogate the sovereign immunity of the states. *See In re Creative Goldsmiths*, 119 F.3d 1140, 1147 (1997); *cert. denied*, —— U.S. ——, 118 S.Ct. 1517, 140 L.Ed.2d 670 (1998). The Fourth Circuit stated:

> While 11 U.S.C. § 106(b) may correctly describe those actions that, as a matter of constitutional law, constitute a state's waiver of the Eleventh Amendment, it is nevertheless not within the Congress' power to abrogate such immunity by "deeming" a waiver. Rather, in the absence of a constitutional authorization, it lies solely within a state's sovereign power to waive its immunity voluntarily and to consent to federal jurisdiction. Only if it waives such immunity may a private citizen sue the state in federal court.

*Id.* at 1147. Despite holding § 106(b) unconstitutional, the Fourth Circuit recognized, consistent with *Gardner v. New Jersey*, that, when a state files a proof of claim in a bankruptcy proceeding, the state waives its sovereign immunity in regard to the debtor's claims which arise out of the same transaction or occurrence as the state's proof of claim. *Id.* at 1148.

In contrast to the Fourth Circuit's decision in *In re Creative Goldsmiths*, the Tenth Circuit has held that § 106(b) is not affected by the Supreme Court's decision in *Seminole Tribe*. *See In re Straight*, 143

F.3d 1387 (10th Cir.1998). The Tenth Circuit stated:

> [Section] 106(b) does not pretend to abrogate a state's immunity, it merely codifies an existing equitable circumstance under which a state can choose to preserve its immunity by not participating in a bankruptcy proceeding or to partially waive that immunity by filing a claim. The choice is left to the state. Thus, § 106(b) follows the lead already established by the Supreme Court in *Gardner v. New Jersey.*

*Id.* at 1392.

We decline to address the issue of whether § 106(b) is constitutional because the Board's conduct falls squarely under the Supreme Court's decision in *Gardner v. New Jersey. See Crowder v. Kitagawa,* 81 F.3d 1480, 1486 (9th Cir.1996) ("It is 'a fundamental rule of judicial restraint' that federal courts 'ought not pass on questions of constitutionality ... unless such adjudication is unavoidable.' ") (quoting *Jean v. Nelson,* 472 U.S. 846, 854, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985)). The Seventh and Eleventh Circuits recently declined to address the constitutionality of § 106(b) and instead relied exclusively on *Gardner v. New Jersey* to conclude that a state waives its sovereign immunity when it files a proof of claim in a bankruptcy proceeding. *See In re Burke,* 146 F.3d 1313, 1317–20 (11th Cir.1998); *In re Platter,* 140 F.3d 676, 678–80 (7th Cir.1998). We follow the lead of the Seventh and Eleventh Circuits

and conclude that, based upon the Supreme Court's decision in *Gardner v. New Jersey,* the Board waived its sovereign immunity in this case when it filed a proof of claim for unpaid state income taxes against the Jacksons.[1] The federal courts have jurisdiction to hear this case and we must determine whether the Jacksons' tax liability debts are excepted from the Bankruptcy Code's discharge provisions.

## B. DISCHARGEABILITY OF THE JACKSONS' STATE INCOME TAX LIABILITY

 The bankruptcy court's interpretation of the Bankruptcy Code is reviewed de novo, *In re Federated Group, Inc.,* 107 F.3d 730, 732 (9th Cir.1997); *In re Harrell,* 73 F.3d 218, 219 (9th Cir.1996)(per curiam), and we review the district court's decisions on an appeal from a bankruptcy court de novo applying the same standard of review applied by the district court. *In re Wilbur,* 126 F.3d 1218, 1219 (9th Cir. 1997); *In re Claremont Acquisition Corp.,* 113 F.3d 1029, 1031 (9th Cir.1997).

 Section 523 of the Bankruptcy Code[2] excepts from the Bankruptcy Code's discharge provisions a tax liability debt if: (1) the tax underlying the tax liability debt required a return; and (2) the debtor failed to file the required return. *See* 11 U.S.C. § 523(a)(1)(B)(i). Former section 18451 of the California Revenue and Taxation Code[3] required a taxpayer to report to

---

1. It should be noted that the State has made no attempt to assert Eleventh Amendment sovereign immunity in this case and that we have addressed the sovereign immunity issue to end uncertainty that may exist regarding the validity of *Gardner.*

2. 11 U.S.C. § 523, in relevant part, provides:

 (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-
 (1) for a tax or a customs duty-

 \* \* \*

 (B) with respect to which a return, if required-
 (i) was not filed; or

3. Former § 18451 of the Cal. Rev. & Tax. Code provided:

 If the amount of gross income or deductions for any year of any taxpayer as returned to the United States Treasury Department is changed or corrected by the Commissioner of Internal Revenue ... such taxpayer shall report such change or correction ... and shall concede the accuracy of such determination or state wherein it is erroneous. Such changes or correction need not be reported unless they affect the amount of tax payable under this part. Any taxpayer filing an amended return with such department shall also file within 90 days thereafter an amended return with the Franchise Tax Board which shall contain such information as it shall require.

the Board any reassessment made by the IRS if the reassessment affected the taxpayer's tax liability and required a taxpayer to file an amended return with the Board if the taxpayer filed an amended return with the IRS. *See* Cal. Rev. & Tax.Code § 18451.

The Board argues that the debtors' failure to report IRS reassessments pursuant to § 18451 is the equivalent of a failure to file a return, and, therefore, the debtors' state income tax liabilities are excepted from the Bankruptcy Code's discharge provisions. The Jacksons argue that the filing of a report pursuant to § 18451 is not the equivalent of the filing of a return, and, therefore, their state tax liabilities are dischargeable under the Bankruptcy Code's discharge provisions. The filing of a report under § 18451 is not the equivalent of the filing of a return and the Jacksons' tax liability debts are dischargeable.

 Statutory interpretation begins with the plain meaning of the statute's language. *In re Bonner Mall Partnership,* 2 F.3d 899, 908 (9th Cir.1993). When the statutory language is clear and consistent with the statutory scheme at issue, the statute's plain language is conclusive and this Court need not inquire beyond the plain language of the statute. *United States v. Hunter,* 101 F.3d 82, 84 (9th Cir.1996); *In re Bonner Mall Partnership,* 2 F.3d at 908. The Jacksons' tax liability debts are not excepted from discharge pursuant to § 523(a)(1)(B)(i) because the plain language of § 523(a)(1)(B)(i) excepts tax debts from discharge only when a required return is not filed and the plain language of § 18451 did not require the Jacksons to file a return with the Board.

The Board's argument that the term "return" in § 523 includes a tax report that is required by § 18451 ignores the principle that "exceptions to dischargeability should be strictly construed in order to preserve the Bankruptcy Act's purpose of giving debtors a fresh start." *Matter of Kasler,* 611 F.2d 308, 310 (9th Cir.1979) (citing *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 59 L.Ed. 717 (1915)). A return is "a formal statement on a required legal form showing taxable income, allowable deductions and exemptions and the computation of the tax due." *Webster's Ninth New Collegiate Dictionary* 1008 (1985). A strict construction of the plain meaning of the term return mandates the conclusion that a report required by § 18451 does not constitute a return. Section 18451 only requires a taxpayer to report an IRS reassessment and does not require the taxpayer to follow the formalities of filing a full return. The Jacksons did fail to file reports that were required by § 18451, but they did not fail to file returns.

Section 18451 itself even recognizes a difference between reports and returns. Section 18451 requires a report when the IRS makes a reassessment and the reassessment affects the taxpayer's tax liability but requires an amended return when the taxpayer files an amended return with the IRS. Because § 18451 requires a report under some circumstances yet requires an amended return under different circumstances, § 18451 unequivocally distinguishes informal reports from formal returns.

The Board relies on *In re Blutter,* 177 B.R. 209 (Bankr.S.D.N.Y.1995), to support its argument that the Jacksons' failure to report an IRS reassessment pursuant to § 18451 renders their tax liability debts non-dischargeable. In *Blutter,* the bankruptcy court rejected the argument that a report was not a return and concluded that the debtor's failure to report a tax reassessment rendered the debtor's tax liability debt non-dischargeable. *In re Blutter,* 177 B.R. at 211–12. The court reasoned that "a debtor should not be rewarded with a discharge for failing to comply with his filing obligations...." *Id.* at 211. The reasoning in *Blutter* must be rejected because it ignores other provisions of the Bankruptcy Code that address violations of tax laws by debtors.

 The mere failure to comply with tax laws or filing obligations does not

automatically render a tax liability debt non-dischargeable under the Bankruptcy Code. The Bankruptcy Code defines when a failure to comply with tax laws, besides a failure to file a return, renders a tax liability debt non-dischargeable. Section 523(a)(1)(C) excepts from discharge tax liability debts "with respect to which the debtor made a fraudulent return or *willfully attempted in any manner* to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C) (emphasis added). Section 523(a)(1)(B)(i) would render § 523(a)(1)(C) superfluous if § 523(a)(1)(B)(i) encompassed every tax law violation like the Jacksons' failure to report the IRS reassessment. Section 523(a)(1)(B)(i) cannot be read so broadly as to render § 523(a)(1)(C) superfluous because all statutory provisions must be given meaning and effect. *See Burrey v. Pacific Gas & Elec. Co.*, 159 F.3d 388, 394 (9th Cir.1998) ("In interpreting a statutory provision, we must avoid any construction that renders some of its language superfluous."). A violation of a tax law that is not a failure to file a return must be a willful attempt to evade or defeat the tax at issue to render the underlying tax liability debt non-dischargeable. The Jacksons only failed to file a report and nothing in the record suggests that they willfully attempted to evade or defeat the underlying state income taxes. Their tax liability debts cannot be excepted from the Bankruptcy Code's discharge provisions pursuant to § 523(a)(1)(B)(i).

The rationale and policy positions that underlie § 523(a)(1)(B)(i) further support the conclusion that the Jacksons' tax liability debts are not excepted from discharge. "The policy behind this subsection is that a debtor should not be permitted to discharge a tax liability based upon *a required tax return that was never filed.*" 3 *Norton Bankruptcy Law and Practice 2d* § 47:6, 47–15 (1997) (emphasis added). This case does not present a situation where a required tax return was never filed because the Jacksons did file their original tax returns and, contrary to the Board's assertions, the rationale and policy

considerations that underlie § 523(a)(1)(B)(i) do not support the conclusion that the Jacksons' failure to report the IRS reassessments constituted a failure to file a tax return.

Other courts have also concluded that tax liability debts are not excepted from bankruptcy discharge when a debtor fails to comply with a notice statute. *See In re Dyer*, 158 B.R. 904, 906 (Bankr.W.D.N.Y. 1993) ("dischargeable taxes are not converted into non-dischargeable taxes by a State's 'requiring' successive returns ('amended returns') addressing the same basic information, or by a State's labelling all 'amendments' or 'notifications' as 'returns.'"); *In re Blackwell*, 115 B.R. 86 (Bankr.W.D.Va.1990) (requiring taxpayer to report IRS reassessment is not the equivalent of requiring a return). In both *Dyer* and *Blackwell* the bankruptcy courts noted that exceptions to discharge must be construed narrowly and refused to construe § 523(a)(1)(B)(i) beyond its plain language. *In re Dyer*, 158 B.R. at 906; *In re Blackwell*, 115 B.R. at 88–89. The bankruptcy court in *In re Dyer* concluded: "Once a debtor has filed 'a return' for a tax which is 'required' to be so reported that provision [§ 523(a)(1)(B)(i)] has been met.... Once a requirement has been satisfied, it does not become 'unsatisfied' because some new requirement has been superadded." *In re Dyer*, 158 B.R. at 906. The reasoning of the bankruptcy courts in *Dyer* and *Blackwell* is persuasive.

The Jacksons' failure to file a report does not fall within the plain language of § 523(a)(1)(B)(i) and nothing in the record indicates that the Jacksons failed to report the IRS reassessments to the Board to evade state income taxes. The Jacksons' tax liability debts are not excepted from the Bankruptcy Code's discharge provisions.

## III. CONCLUSION

The Board waived its Eleventh Amendment sovereign immunity in this case when it filed a proof of claim against the Jack-

sons for unpaid taxes and the bankruptcy court and the district court correctly concluded that the Jacksons' tax liability debts were dischargeable.

**AFFIRMED.**