Nicholas LASSONDE, Plaintiff,

v.

**PLEASANTON UNIFIED SCHOOL DISTRICT, et al., Defendants.**

No. C00–2150 TEH.

United States District Court, N.D. California.

Oct. 2, 2001.

---

Steven N.H. Wood, Stoddard Falco & Pfeiffer, Walnut Creek, CA, for plaintiff.

Louis A. Leone, Stubbs & Leone, P.C., Walnut Creek, CA, Karen Reaendes–Tannehill, Pleasanton, CA, for defendants.

*ORDER*

THELTON E. HENDERSON, District Judge.

This matter came before the Court on Monday, September 24, 2001, on cross-motions for summary judgment or, in the alternative, for summary adjudication under Rule 56 of the Federal Rules of Civil Procedure. After careful consideration of the parties' written and oral arguments, this Court DENIES Plaintiff's motion and GRANTS Defendants' motion for the reasons described below. Plaintiff's state law claims are dismissed without prejudice.

## FACTUAL BACKGROUND

Plaintiff Nicholas Lassonde alleges that Defendants violated his constitutional and other rights when they prohibited him from giving a salutatorian speech that included proselytizing comments [1] at his high school graduation. The undisputed facts are as follows: Based on his grade-point average, Plaintiff was one of two co-salutatorians of the Amador Valley High School class of 1999. As a result, he was invited to deliver a speech at the school's graduation ceremony that year.

Prior to the ceremony, Plaintiff presented a draft of his speech to Defendant Bill Coupe, principal of Amador Valley High School, following Coupe's request. Coupe reviewed Plaintiff's speech and, in conjunction with the school district's counsel, determined that allowing a student to deliver proselytizing comments at a public high school graduation ceremony would violate the Establishment Clauses of both the United States and California Constitutions. As a result, Coupe and the district's coun-

---

1. For example, Plaintiff proposed to say the following in his speech: "I urge you to seek out the Lord, and let Him guide you. Through His power, you can stand tall in the face of darkness, and survive the trends of 'modern society.' " N. Lassonde Decl.Ex. A. He also proposed to quote from Psalm 146, and he wished to conclude by asking his audience, " 'For the wages of sin is death; but the gift of God is eternal life through Jesus Christ our Lord.' Have you accepted the gift, or will you pay the ultimate price?" *Id.*

sel advised Plaintiff that references to God as they related to Plaintiff's own beliefs were permissible, but that proselytizing comments were not.

Plaintiff and Defendants engaged in multiple discussions to determine what Plaintiff would and would not be allowed to say during his graduation speech. Plaintiff eventually agreed, under protest, to deliver his speech without the proselytizing language, but to hand out copies of the full text of his proposed speech outside the graduation ceremony site.

On June 18, 1999, Plaintiff delivered his speech at the graduation ceremony and distributed handouts as agreed. The ceremony occurred at the Alameda County Fairgrounds, but it was financed by Amador Valley High School and conducted entirely under the school's direction. Amador Valley High School is part of the Pleasanton Unified School District ("District").

Nearly one year later, on June 16, 2000, Plaintiff filed this suit seeking damages from Coupe; the District; Mary Frances Callan, the District's superintendent; and Jim Negri, the District's assistant superintendent. Plaintiff asserts seven claims against Defendants: violation of Plaintiff's federal constitutional rights to free speech, religious liberty, and equal protection; violation of Plaintiff's state constitutional rights to free speech, religious liberty, and equal protection; and violation of a state education statute that provides, in part, that school districts shall not "sponsor any activity which reflects adversely upon persons because of their ... creed," Cal.Educ. Code § 51500 (West 2001).

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c) (West 2001); *Toscano v. Prof'l Golfers Ass'n*, 258 F.3d 978, 982 (9th Cir.2001). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The court may not weigh the evidence and must view the evidence in the light most favorable to the nonmoving party. *Id.* at 255, 106 S.Ct. 2505.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trial of fact could find other than for the moving party. *Id.* at 322–323, 106 S.Ct. 2548. However, on an issue for which its opponent will have the burden of proof at trial, the moving party can prevail merely by "pointing out to the District Court ... that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548. If the moving party meets its initial burden, the opposing party must then "set forth specific facts showing that there is a genuine issue for trial" in order to defeat the motion. Fed. R.Civ.P. 56(e) (West 2001); *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505.

## DISCUSSION

### I. *Eleventh Amendment Sovereign Immunity*

Although neither party raised the issue of Eleventh Amendment sovereign immunity, this Court must resolve that issue before reaching the merits of the case. *In re Jackson*, 184 F.3d 1046, 1048 (9th Cir.

1999). Sovereign immunity limits the jurisdiction of the federal courts and may be raised by a court sua sponte. *Id.*

The Eleventh Amendment "bars suits in federal court against a state and its agencies brought by its own citizens and citizens of other states." *Id.* at 1049. It also bars suits for damages brought against state officials in their official capacities. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."). However, it does not bar suits for damages brought against state officials in their individual capacities. *Hafer v. Melo,* 502 U.S. 21, 30–31, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).

■ In this case, Plaintiff asserts claims for damages against the District and three District employees, sued in both their individual and official capacities. The Eleventh Amendment requires that Plaintiff's claims be dismissed as to the District and the three employees in their official capacities.[2] *See Cole v. Oroville Union High Sch. Dist.,* 228 F.3d 1092, 1100 n. 4 (9th Cir.2000), *cert. denied,* — U.S. —, 121 S.Ct. 1228, 149 L.Ed.2d 138 (2001) (holding that the district court correctly concluded it did not have jurisdiction over damage claims brought under federal law against a California school district and district officials in their official capacities). *See also Belanger v. Madera Unified Sch. Dist.,* 963 F.2d 248 (9th Cir.1992) (holding that California school districts are state agencies for purposes of the Eleventh Amendment and are therefore immune from suit in federal court); *O.H. v. Oakland Unified Sch. Dist.,* No. C–99–5123 JCS, 2000 WL 33376299 at *3–4 (N.D.Cal. Apr.14, 2000) (citing *Belanger,* 963 F.2d at 254; *Gil-*

breath v. Cutter Biological, Inc.,* 931 F.2d 1320, 1326 (9th Cir.1991)) (holding that a California school district is immune from suit in federal court, regardless of whether the causes of action are state or federal). Thus, this Court may only consider Plaintiff's claims against the three District employees in their individual capacities.

## II. *Plaintiff's Federal Constitutional Claims*

### A. *Qualified Immunity*

Defendants assert that the three individual defendants are entitled to summary judgment in their favor on the basis of qualified immunity. Qualified immunity requires a two-step analysis. First, a court must consider whether, "taken in the light most favorable to the party asserting the injury, ... the facts alleged show the [state official's] conduct violated a constitutional right." *Saucier v. Katz,* 533 U.S. 194, —, 121 S.Ct. 2151, 2156; 150 L.Ed.2d 272 (2001). If no constitutional right would have been violated if the allegations were established, then there is no need to continue the qualified immunity analysis. *Id.* On the other hand, if a constitutional right would have been violated, then the court must determine "whether the right was clearly established." *Id.*

Following the Supreme Court's qualified immunity framework, this Court cannot rule on the qualified immunity question until it first determines whether Defendants would have violated any of Plaintiff's constitutional rights under the facts alleged, viewed in the light most favorable to Plaintiff. Consequently, this Court now addresses each of Plaintiff's federal constitutional claims to determine if any of them have merit.

---

2. State agencies can waive sovereign immunity, thereby consenting to be sued. *In re Jack-*

*son,* 184 F.3d at 1048. However, Defendants in this case have not done so.

## B. *Federal Free Speech and Religious Liberty Claims*

■ Despite Plaintiff's arguments to the contrary, *see infra* pp. 1112–13, the Ninth Circuit squarely addressed Plaintiff's first two claims—involving federal constitutional rights to free speech and religious liberty—in *Cole*, 228 F.3d 1092. The *Cole* defendants, officials from Oroville Union High School, barred plaintiff Chris Niemeyer from delivering a proselytizing valedictory speech at the school's 1998 graduation ceremony.[3] *Id.* at 1096. The Ninth Circuit held that, even assuming that the Oroville graduation ceremony was a public or limited public forum, the defendants' actions did not violate Niemeyer's freedom of speech because they were necessary to avoid violating the Establishment Clause.[4] *Id.* at 1101–05. Moreover, the school officials' actions did not violate the students' religious liberties for the same reason. *Id.* at 1104 n. 9.

The facts surrounding Niemeyer's and Plaintiff's speeches are remarkably similar. Both students were selected to give speeches at their respective graduation ceremonies by virtue of class ranking.[5] Both were told that their speeches would have to be reviewed for content by school officials before they could deliver their speeches at graduation.[6] Both sought to give speeches reflecting their religious beliefs and urging others to adopt those beliefs. And both were denied the opportunity to deliver those speeches at graduation ceremonies supervised by public school officials and financed by public school funds.

Plaintiff urges this Court to distinguish *Cole* solely on the basis that *Cole* did not present the opportunity to consider "whether a disclaimer offered a 'less restrictive means' of accomplishing the state's interest."[7] Pl.'s Mot. for Summ.J.

---

3. The defendants similarly barred plaintiff Ferrin Cole from delivering a sectarian invocation at the same ceremony. *Id.*

4. Plaintiff and Defendants both devoted a significant amount of briefing to whether the Amador Valley High School graduation was a nonpublic or limited public forum. However, because the Ninth Circuit's controlling decision in *Cole* did not depend on the type of forum, this Court need not decide that question.

5. Niemeyer was a co-valedictorian, while Plaintiff was a co-salutatorian.

6. Plaintiff argues that Defendant Coupe has only been principal of Amador Valley High School since 1998, and so Plaintiff's 1999 graduation was the first one in which Coupe exercised any control as principal. Plaintiff suggests that, as a result, Coupe's review of graduation speeches "could not be regarded as a policy or practice at the time of the events giving rise to this lawsuit." Pl.'s Resp. to Defs.' Separate Statement of Uncontroverted Material Facts at 2. However, this distinction is not persuasive. Plaintiff does not dispute Defendants' claim that Coupe has exercised review over graduation speeches for the past three years in which he has been

principal, thereby establishing a policy or practice over time. Furthermore, were this Court to accept Plaintiff's position, no school could ever institute a new policy or practice; students affected by the policy in its first year could argue that the policy was invalid because it had not been established over time. This Court finds such reasoning to be nonsensical, and Plaintiff cites no authority to convince it to reach a contrary conclusion.

7. At oral argument, Plaintiff's counsel also raised the argument that *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 121 S.Ct. 2093, 150 L.Ed.2d 151 (2001), invalidated the Ninth Circuit's reasoning in *Cole.* This Court is not so persuaded because *Good News Club* involved easily distinguishable facts. In *Good News Club*, the Supreme Court found that it was unconstitutional for a school to deny after-school access to a religious group to use school facilities, which the school opened up for use by other organizations, for meetings that were not school-sponsored and which students were not required to attend. In *Cole* and this case, by contrast, the schools barred students from delivering proselytizing messages at a school-sponsored graduation ceremony that was closed to the public, conducted completely under the school's direction,

at 17–18. This Court finds Plaintiff's argument to be without merit. Although the Ninth Circuit's opinion in *Cole* made no specific reference to disclaimers, it concluded that "the District's refusal to allow the students to deliver a sectarian speech or prayer as part of the graduation was *necessary* to avoid violating the Establishment Clause." *Cole* at 1101 (emphasis added). Thus, the Ninth Circuit implicitly rejected Plaintiff's argument that a disclaimer would have been effective.[8] If, as Plaintiff argues, a school district could avoid a constitutional violation simply by disclaiming endorsement of the contents of students' speeches, then censoring a student's proselytizing speech would not have been "necessary." *See id.* (applying strict scrutiny in upholding the school district's decision to censor Niemeyer's speech); *U.S. v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 813, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000) (explaining that, to survive strict scrutiny, a speech regulation must be the least restrictive alternative to achieve a compelling government interest).

As a member court of the Ninth Circuit, this Court is bound to follow *Cole*.[9] Consequently, it must reject Plaintiff's invitation to analyze his case as if no controlling, on-point authority existed. To the contrary, *Cole* requires this Court to rule in favor of Defendants on Plaintiff's claims involving federal constitutional rights to free speech and religious liberties.

## C. *Federal Equal Protection Claim*

██ Plaintiff next claims that Defendants violated his constitutional right to equal protection under the law by discriminating against him on the basis of his religion. Regardless of the level of scrutiny applied,[10] this Court must rule in favor of Defendants. Even if this Court were to apply strict scrutiny, Defendants would satisfy their burden. As noted above, Defendants' actions were necessary to further

and involved students and school and district officials as the only participants. The Supreme Court itself noted the distinction between the facts presented in *Good News Club* and a graduation ceremony. *See Good News Club*, 121 S.Ct. 2093 at 2104–05 (distinguishing the case from *Lee v. Weisman*, 505 U.S. 577, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992), by observing that, unlike the middle-school graduation ceremony at issue in *Lee*, the access sought in *Good News Club* involved "a nonschool function" with "no government sponsorhip" of the religious activities or speech in question) (further distinguishing the two cases by noting the Court's conclusion in *Lee* that "attendance at the graduation exercise was obligatory," in contrast to the voluntary attendance at meetings of the Good News Club).

8. Under slightly different circumstances, the Third Circuit explicitly rejected the use of a disclaimer as effective in preventing an Establishment Clause violation. *See ACLU of New Jersey v. Black Horse Pike Reg'l Bd. of Educ.*, 84 F.3d 1471 (3d Cir.1996) (holding that a policy allowing the senior class of a public high school to vote on whether prayer would be included in its graduation ceremony violated the Establishment Clause, despite a provision that the printed graduation programs include a disclaimer of endorsement).

9. This Court might depart from the Ninth Circuit's decision if subsequent controlling law or precedent superseded the reasoning of the Circuit court. However, the only potential case cited by Plaintiff is *Good News Club v. Milford Cent. Sch. Dist.*, 533 U.S. 98, 121 S.Ct. 2093, 150 L.Ed.2d 151 (2001). As discussed above, *Good News Club* is not controlling here. *See supra* note 7 (discussing factual distinctions between *Good News Club* and this case).

10. Compare *Corp. of Presiding Bishop of Church of Jesus Christ of Latter–Day Saints v. Amos*, 483 U.S. 327, 338–39, 107 S.Ct. 2862, 97 L.Ed.2d 273 (1987) (applying rational basis review to an equal protection claim based on religion) *with Ball v. Massanari*, 254 F.3d 817, 823–24 (9th Cir.2001) (listing religion as an example of a suspect class requiring strict scrutiny, but omitting religion from a list of classifications in which the Supreme Court has applied heightened scrutiny).

the compelling state interest of avoiding an Establishment Clause violation. *See Cole,* 228 F.3d at 1101–05.

### D. *Summary of Plaintiff's Federal Claims*

In short, this Court finds in favor of Defendants on all three of Plaintiff's federal claims. Even viewed in the light most favorable to Plaintiff, the facts alleged do not establish that Defendants violated any of Plaintiff's federal constitutional rights. As a result, this Court need not reach the second stage of qualified immunity analysis discussed in *Katz,* —— U.S. at ——, 121 S.Ct. at 2156 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

### III. *Plaintiff's State Constitutional and Statutory Claims*

■ Plaintiff further claims that Defendants violated his state constitutional rights to free speech, religious liberty, and equal protection, along with a state education statute that prohibits school sponsorship of "any activity which reflects adversely upon persons because of their ... creed," Cal.Educ.Code § 51500 (West 2001). These claims present purely state law matters between parties of non-diverse citizenship. Thus, any jurisdiction over these claims in this Court would have to be supplemental under 28 U.S.C. § 1367.

Because no federal claims remain to be resolved in this case, this Court uses its discretion and declines to exercise supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3) (West 2001) (allowing a district court to decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction"). Plaintiff's four state law claims are therefore dismissed without prejudice.

## CONCLUSION

For the above reasons, and finding no dispute over material facts, this Court rules as follows:

1. Plaintiff's Motion for Summary Judgment or, in the Alternative, for Summary Adjudication is DENIED.

2. Defendants' Motion for Summary Judgment is GRANTED.

3. Plaintiff's state law claims are dismissed without prejudice.

**IT IS SO ORDERED.**