344 F.3d 940
 Big Meadows Grazing Association, Plaintiff-Appellant,
v.
UNITED STATES of America, by and through; Ann M. Veneman, in her capacity as Secretary of the Department of Agriculture; Shirley Gammon, in her capacity as State Conservationist (for the State of Montana) with the Natural Resources and Conservation Service, an agency of the Department of Agriculture, Defendants-Appellees.
 No. 02-35764.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted August 6, 2003 — Seattle, Washington.
 Filed September 15, 2003.
 
 Kent P. Saxby, Johnson, Berg, McEvoy & Bostock, PLLP, Kalispell, Montana, for the plaintiff-appellant.
 Robert R. Klotz, Appellate Section, Environment & Natural Resources Division, United States Department of Justice, Washington, D.C., for the defendants-appellees.
 Appeal from the United States District Court for the District of Montana; Donald W. Molloy, District Judge, Presiding. D.C. No. CV-01-00204-DWM.
 Before: James R. Browning, Arthur L. Alarcón, and Richard R. Clifton, Circuit Judges.
 CLIFTON, Circuit Judge.
 
 
 1
 No less than half of the wetlands[1] in the continental United States have been destroyed since 1600.[2] To counter this trend, the Natural Resource Conservation Service of the Department of Agriculture established the Wetlands Reserve Program (the "WRP") to provide landowners an opportunity to protect, restore, and enhance wetlands on their property."[3] Big Meadows Grazing Association ("Big Meadows") sold the United States a conservation easement so that part of Big Meadows' property could be enrolled in the WRP. When Big Meadows and the United States subsequently disagreed on what conservation activities would occur on the property, the government began unilaterally implementing its proposed conservation plan. Big Meadows sued, seeking in pertinent part a declaratory judgment that implementation of the conservation plan without its approval would violate 16 U.S.C. § 3837a. The district court granted summary judgment for the government, ruling that the government need not obtain Big Meadows' approval before implementing the conservation plan. Big Meadows timely appealed. Because § 3837a neither requires Big Meadows' assent to the conservation plan nor requires that the agreement to implement a conservation plan be made apart from the easement, we affirm.
 
 I. BACKGROUND
 
 2
 Ever since December 1999, the government has held a permanent conservation easement on approximately 1,812 acres of land that Big Meadows owns in Flathead County, Montana. The government paid Big Meadows approximately $1.9 million for the easement, the purpose of which is to "restore, manage, maintain, and enhance" wetlands and to conserve "natural values." Before the easement was conveyed, the government allegedly informed Big Meadows that the conservation plan would cost around $80,000 to implement. However, the government's latest conservation plan, from September 2001, is projected to cost over $486,000. The government did not provide Big Meadows with a Preliminary Restoration Plan ("PRP") before obtaining the easement.
 
 
 3
 Insisting that the latest conservation plan is "radically different" from representations that were made both before and after the easement was conveyed, Big Meadows has refused to agree to its implementation. Big Meadows disagrees with the scope and type of restoration activities that are to take place. For example, according to Big Meadows, the conservation plan originally envisioned restoring a streambed, but now proposes impounding water via a dam, which Big Meadows finds objectionable. Unable to obtain Big Meadows' agreement, the government informed Big Meadows that its agreement was not necessary and began unilaterally implementing the conservation plan in November 2001.
 
 
 4
 Litigation ensued. Big Meadows sought in district court a declaratory judgment that the government had violated § 3837a by attempting to implement a conservation plan without Big Meadows' agreement, and an injunction preventing the government from performing any restoration activities until Big Meadows approved of a conservation plan. The district court denied Big Meadows' requests for a temporary restraining order and for a preliminary injunction. The government then moved to dismiss for failure to state a claim, arguing in relevant part that § 3837a had not been violated. Construing the motion as one for summary judgment, the district court granted summary judgment for the government, holding that § 3837a did not require the government to obtain Big Meadows' agreement before implementing the conservation plan. Big Meadows timely appealed from that decision.
 
 II. DISCUSSION
 
 5
 A. Section 3837a Does Not Require the Government to Obtain Big Meadows' Agreement to the Terms of the Conservation Plan.
 
 
 6
 Leaning on § 3837a, Big Meadows argues that the government may not implement on the easement property a conservation plan to which Big Meadows has not assented. The statute provides in relevant part:
 
 
 7
 (a) In general. To be eligible to place land into the wetland reserve under this subpart, the owner of such land shall enter into an agreement with the Secretary —
 
 
 8
 (1) to grant an easement on such land to the Secretary; [and]
 
 
 9
 (2) to implement a wetland easement conservation plan as provided for in this section....
 
 
 10
 16 U.S.C. § 3837a(a) (2000).
 
 
 11
 There is no dispute that subpart (1) has been satisfied. Big Meadows argues, however, that subpart (2) has not been met. Big Meadows reads subpart (2) as requiring the government to obtain Big Meadows' assent to the particular conservation plan to be implemented. We find no support for this construction in the statute. The language of subpart (2) plainly does not require agreement on the specific terms of the conservation plan. All subpart (2) requires is that Big Meadows enter into an agreement "to implement a wetland easement conservation plan" of some kind. Big Meadows did that when it conveyed the conservation easement here.
 
 
 12
 Scrutiny of the particular terms of this easement reveals that Big Meadows agreed to the implementation of a wetland easement conservation plan. Specifically, Big Meadows relinquished all rights not expressly reserved in Part II of the easement:
 
 
 13
 [T]he Grantor(s), hereby grants and conveys with general warranty of title to the UNITED STATES OF AMERICA and its assigns ... forever, all rights, title and interest in the lands comprising the easement area ... and appurtenant rights of access to the easement area, but reserving to the Landowner only those rights, title and interest expressly enumerated in Part II. It is the intention of the Landowner to convey and relinquish any and all other property rights not so reserved.
 
 
 14
 Part II expressly reserved in Big Meadows only record title, the right of quiet enjoyment, the right to prevent trespass and control public access, the right to undeveloped recreational uses, and the right to subsurface resources. Big Meadows did not reserve, for instance, the right to veto the conservation plan.
 
 
 15
 Expressly granted, in fact, was the right for the government to undertake "any" restoration activities: "The United States shall have the right to enter unto the easement area to undertake ... any activities to restore, protect, manage, maintain, enhance, and monitor the wetland and other natural values of the easement area." (Emphasis added.) The purpose of the easement was "to restore, protect, manage, maintain, and enhance the functional values of wetlands," and the easement expressly recognized that "restoration and management activities on the easement area" would occur. This language demonstrates that, in conveying the easement and pursuant to its terms, Big Meadows "enter[ed] into an agreement with the Secretary... to implement a wetland easement conservation plan."[4] 16 U.S.C. § 3837a(a) (2000).
 
 
 16
 Notably, § 3837a(c) reserves no role for the landowner in developing a conservation plan, supporting our conclusion that Big Meadows' approval is not required:
 
 
 17
 (c) Restoration plans. The development of a restoration plan, including any compatible use, under this section shall be made through the local Natural Resources Conservation Service representative, in consultation with the State technical committee.
 
 
 18
 Guidance in support of the government's position is further provided by § 3837a(b), which reads in pertinent part:
 
 
 19
 (b) Terms of easement. An owner granting an easement under subsection (a) of this section shall be required to provide for the restoration and protection of the functional values of wetland pursuant to a wetland easement conservation plan that—
 
 
 20
 * * * * * *
 
 
 21
 (4) includes such additional provisions as the Secretary determines are desirable to carry out this subpart or to facilitate the practical administration thereof.
 
 
 22
 Subpart (b)(4) vests in the Secretary discretion to include any desirable provisions in the conservation plan. It does not require the Secretary to obtain Big Meadows' assent.
 
 
 23
 Nor must the conservation agreement be made separate and apart from the easement. While § 3837a(a) requires that Big Meadows both agree to grant an easement and agree to the implementation of a conservation plan, it nowhere prohibits the latter agreement from being contained in the easement. Section 3837a(b) suggests no such prohibition either. Big Meadows relies on the portion of that section stating, "An owner granting an easement under [§ 3837a(a)] shall be required to provide for the restoration and protection of the functional values of wetland pursuant to a wetland easement conservation plan...." 16 U.S.C. § 3837a(b) (2000). But that language nowhere indicates that agreement to the conservation plan cannot be contained in the easement. In fact, § 3837a(b) is titled "Terms of easement," suggesting that the agreement to implement a conservation plan may well be part of the easement.
 
 
 24
 Federal regulations prompt no different result. Seven C.F.R. § 1467.4(a) (2003) states in pertinent part, "To participate in WRP, a landowner will agree to the implementation of a Wetlands Reserve Plan of Operations (WRPO) ...." Like 16 U.S.C. § 3837(a), this regulation requires only that Big Meadows agree to the implementation of a conservation plan. It does not require that Big Meadows assent to the terms of the particular conservation plan chosen.
 
 
 25
 Neither does 7 C.F.R. § 1467.10(d) (2003), which provides in relevant part (emphasis added):
 
 
 26
 (d) The landowner shall:
 
 
 27
 (1) Comply with the terms of the easement;
 
 
 28
 (2) Comply with all terms and conditions of any associated contract;
 
 
 29
 * * * * * *
 
 
 30
 (4) Agree to the long-term restoration, protection, enhancement, maintenance, and management of the easement in accordance with the terms of the easement and related agreements....
 
 
 31
 Far from indicating that a separate agreement is required, the emphasized portions actually suggest the contrary. Subpart (d)(2)'s reference to "any associated contract" indicates that a separate contract may, but need not, exist. Subpart (d)(4)'s reference to "related agreements" does not indicate that separate related agreements must exist, but merely acknowledges that they may.
 
 
 32
 Finally, we turn to 7 C.F.R. § 1467.12(b) (2003), which specifies in relevant part, "Modifications to the WRPO which are substantial and affect provisions of the easement will require agreement from the landowner and require execution of an amended easement." At most, this regulation may suggest that the conservation plan (the WRPO) is to exist apart from the easement (though we offer no opinion on this matter). It nowhere indicates that the agreement to implement a conservation plan must exist apart from the easement.
 
 
 33
 In sum, the plain language of § 3837a (with which the underlying regulations are consistent) does not require that Big Meadows assent to a conservation plan before it may be implemented. Nor does it require that the agreement to implement a conservation plan be made separate and apart from the easement. All it requires is that Big Meadows agree to the implementation of a wetland easement conservation plan. Big Meadows did so under the specific terms of the easement it conveyed to the government.
 
 
 34
 We do not hold that the conveyance of an easement pursuant to § 3837a(a)(1) obviates the requirement of § 3837a(a)(2) that there be an agreement "to implement a wetland easement conservation plan." Rather, our holding is that when, as here, the particular terms of the easement demonstrate an agreement to implement a wetland easement conservation plan, subpart (a)(2) is met. Subpart (a)(2) neither requires the agreement to be made separate and apart from the easement, nor does it require agreement on the specific terms of the conservation plan.
 
 
 35
 Because the plain language of the statute unambiguously forecloses Big Meadows' argument, our inquiry ends here. See Cal. Franchise Tax Bd. v. Jackson (In re Jackson), 184 F.3d 1046, 1051 (9th Cir. 1999) ("When the statutory language is clear and consistent with the statutory scheme at issue, the statute's plain language is conclusive and this Court need not inquire beyond the plain language of the statute.").
 
 
 36
 B. We Decline to Review Big Meadows' Allegations of Noncompliance with the Manual.
 
 
 37
 Big Meadows also argues that its assent to the conservation plan is required by the Manual.[5] Yet Big Meadows concedes that the Manual cannot bind the government because it is neither substantive in nature nor was promulgated according to the Administrative Procedure Act. See W. Radio Servs. Co. v. Espy, 79 F.3d 896, 902 (9th Cir.1996) (requiring "agency rules to be substantive and to be promulgated according to certain procedural requirements before they can bind an agency"). Because the Manual is nonbinding, we do not review Big Meadows' allegations of noncompliance. See id. at 900 ("We will not review allegations of noncompliance with an agency statement that is not binding on the agency.").
 
 III. CONCLUSION
 
 38
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 Wetlands are home to nearly 5,000 species of plant life and numerous species of animal life (including such endangered species as the whooping crane, bald eagle, red wolf, and fatmucket mussel)See http://www.nrcs. usda.gov/feature/highlights/wetlands/life.html (last visited August 19, 2003). Wetlands also help prevent floods, control erosion, protect shorelines, and filter water pollutants. See http://www.nrcs.usda.gov/feature/highlights/ wetlands/places.html (last visited August 19, 2003).
 
 
 [2]
 See http://h2osparc.wq.ncsu.edu/info/wetlands/intro.html (last visited August 19, 2003).
 
 
 [3]
 See http://www.nrcs.usda.gov/programs/ wrp/ (last visited August 19, 2003); see also 16 U.S.C. § 3837(a) (2000) (the WRP was established "to assist owners of eligible lands in restoring and protecting wetlands").
 
 
 [4]
 Although the easement does express an "intent of [the United States] to give the Landowner the opportunity to participate in the restoration and management activities on the easement area," it nowhere grants Big Meadows the power to veto a conservation plan of which it disapproves
 
 
 [5]
 Big Meadows raised this argument in its brief before the district court. We therefore decline the government's invitation to disregard the argument on the ground that it was raised for the first time on appealSee United States v. Oregon, 769 F.2d 1410, 1414 (9th Cir.1985)("The rule is well-established that absent exceptional circumstances, an issue not raised below will not be considered on appeal.").