**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| IN RE RUDOLF P. SIENEGA, *Debtor,* | No. 20-60047 |
| | BAP No. 19-1334 |
| RUDOLF P. SIENEGA, *Appellant,* | |
| v. | OPINION |
| STATE OF CALIFORNIA FRANCHISE TAX BOARD, *Appellee.* | |

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Faris, Lafferty III, and Spraker, Bankruptcy Judges,
Presiding

Argued and Submitted November 17, 2021
San Francisco, California

Filed December 6, 2021

Before:  Sidney R. Thomas and M. Margaret McKeown, Circuit Judges, and Donald W. Molloy,[*] District Judge.

Opinion by Judge Thomas

**SUMMARY**[**]

**Bankruptcy**

The panel affirmed the Bankruptcy Appellate Panel's judgment affirming the bankruptcy court's summary judgment in favor of the California Franchise Tax Board in an adversary proceeding in which the Board sought to have a Chapter 7 debtor's state tax debts declared nondischargeable under 11 U.S.C. § 523(a)(1)(B).

The panel held that the tax debts were nondischargeable under § 523(a)(1)(B) because the debtor notified the Board of a federal tax adjustment by fax, but he did not file state tax returns.  The panel held that the debtor's faxes did not constitute a return within the meaning of the "hanging paragraph" in § 523(a) because the California state law process with which his faxes complied was not "similar" to 26 U.S.C. § 6020(a), which authorizes the Secretary of Internal Revenue to prepare a tax return when a taxpayer does not do so.

[*] The Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Robert L. Goldstein, Law Offices of Robert L. Goldstein, San Francisco, California, for Appellant.

Donny P. Le, Deputy Attorney General; Lisa W. Chao, Supervising Deputy Attorney General; Tamar Pachter, Senior Assistant Attorney General; Rob Bonta, Attorney General; Attorney General's Office, California Department of Justice, Los Angeles, California; for Appellee.

**OPINION**

THOMAS, Circuit Judge:

This appeal presents the question of whether a Chapter 7 debtor's tax debts were non-dischargeable because the debtor notified the California Franchise Tax Board ("FTB") of a federal tax adjustment, but did not pay state taxes. We conclude that the state tax debt was non-dischargeable. We have jurisdiction pursuant to 28 U.S.C. § 158(d)(1), and we affirm the judgment of the Bankruptcy Appellate Panel ("BAP").[1]

I

Sienega failed to file required California state income tax returns in the 1990, 1991, 1992, and 1996 tax years. Around 2007, the IRS made upward adjustments in Sienega's federal

---

[1] We address Sienega's arguments on the merits despite their divergence from those presented to the BAP. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010).

tax liability for those four years, and in January 2009, the U.S. Tax Court ruled that Sienega was also liable for accuracy-related penalties of approximately $9,688. Following the Tax Court decision, Sienega's counsel notified the FTB of the adjustments via fax. For each of the four tax years, counsel faxed a cover sheet and an IRS form (Form 4549-A) that listed the adjustments to Sienega's income, the corrected taxable income and tax liability, interest and penalties, and the total balance due. Each cover sheet stated:

> Pursuant to California State law, Mr. and Mrs. Sienega hereby notify the Franchise Tax Board that the Internal Revenue Service has made recent adjustments to their [year] federal tax return, which they concede. Following please find a copy of the IRS' adjustments, including a computation of how the changes were made.

In response to these faxes, the FTB issued a notice of proposed assessment to Sienega for each of the four tax years. Each notice stated that the FTB had "no record of receiving [Sienega's] personal income tax return for the year listed above." The notices proposed to assess state taxes for each year "based upon the federal audit report submitted by the taxpayer or representative." The notices also specified that if Sienega disagreed with any of the calculations of state tax liability contained therein, he would need to submit a formal protest to the FTB, lest the assessments become final. Sienega did not file any belated formal tax returns or protest any of the assessments, and the assessments therefore became final by operation of law in October 2009.

In November 2014, Sienega filed a voluntary Chapter 13 bankruptcy petition, which he later converted into a Chapter 7 petition. In November 2018, the FTB filed a timely adversary complaint seeking to have Sienega's outstanding state tax debts declared nondischargeable under 11 U.S.C. § 523(a)(1)(B), based on the fact that he had not filed a formal state tax return in any of the relevant years.

Sienega contended that he had filed state tax returns within the meaning of 11 U.S.C. § 523(a) by faxing information about the adjustments to the FTB and was thus entitled to discharge. The bankruptcy court granted summary judgment to the FTB and declared the tax debt non-dischargeable. The BAP affirmed. This timely appeal followed.

II

Section 523(a)(1)(B) of the Bankruptcy Code bars the discharge of tax debts for which the debtor did not file a "return." Sienega contends that his faxes constituted a return within the meaning of the "hanging paragraph" in § 523(a), which was added to that subsection in 2005 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"):

> For purposes of this subsection, the term "return" means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements). Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law, or a written stipulation to a judgment or a final

order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar State or local law.

11 U.S.C. § 523(a) (flush language).

The relevant provisions of 26 U.S.C. § 6020 state:

**(a) Preparation of return by Secretary.** If any person shall fail to make a return required by this title or by regulations prescribed thereunder, but shall consent to disclose all information necessary for the preparation thereof, then, and in that case, the Secretary may prepare such return, which, being signed by such person, may be received by the Secretary as the return of such person.

**(b)(1) Authority of Secretary to execute return.** If any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefor, or makes, willfully or otherwise, a false or fraudulent return, the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise.

26 U.S.C. § 6020.

Before the BAP, Sienega argued that he had complied with a California state law process "similar" to 26 U.S.C. § 6020(a) by faxing the FTB notice of his federal tax

adjustments pursuant to California Revenue and Taxation Code ("RTC") section 18622.  That California statutory provision provides in relevant part:

> If any item required to be shown on a federal tax return, including any gross income, deduction, penalty, credit, or tax for any year of any taxpayer is changed or corrected by the Commissioner of Internal Revenue . . . or other competent authority, . . . that taxpayer shall report each change or correction . . . within six months after the date of each final federal determination of the change or correction or renegotiation, or as required by the Franchise Tax Board, and shall concede the accuracy of the determination or state wherein it is erroneous.

Cal. Rev. & Tax. Code § 18622(a).

Section 18622(a) is not "similar" to 26 U.S.C. § 6020(a). It does not authorize the FTB to prepare or execute a return. Therefore, under the plain words of the relevant statutes, the return exception contained in § 523(a)'s hanging paragraph does not apply.  And it is undisputed that the FTB did not prepare or execute returns for Sienega.  Rather, it issued notices of proposed assessment and advised that it had no record of any returns being filed for the relevant years.

Sienega now contends that the phrase "similar state or local law" in § 523(a)'s hanging paragraph cannot be limited to statutes, but must include processes, and that his faxes constituted the functional equivalent of a state tax return.  He argues that the faxes provided the requisite tax information

which was sufficient for the FTB to prepare "the required legal form"; that by submitting the information, he subjected himself to criminal liability if it were false; and that the information was sufficient for the taxing authority to prepare an assessment. Thus, he reasons that the faxes constituted filing tax returns under state law within the meaning of § 523(a)'s hanging paragraph.

In this Circuit, we have adopted the Tax Court's test for what constitutes a "return," articulated in *Beard v. Commissioner*, 82 T.C. 766 (T.C. 1984). *See In re Hatton*, 220 F.3d 1057, 1060–61 (9th Cir. 2000) (adopting *Beard*); *see also In re Smith*, 828 F.3d 1094, 1096 (9th Cir. 2016) (stating this Court still applies the *Beard* test post-BAPCPA). Under *Beard*, a "return" is a document that (1) "purport[s] to be a return"; (2) is executed under penalty of perjury; (3) contains enough data to allow computation of the tax; *and* (4) represents an "honest and reasonable attempt to satisfy the requirements of the tax law." *See Hatton*, 220 F.3d at 1060–61. California adheres to an almost identical definition. *See In re Appeals of R. & Sonja J. Tonsberg*, 1985 WL 15812, at \*2 (Cal. St. Bd. Eq. Apr. 9, 1985).

The faxes fail the *Beard* and *Tonsberg* tests. First, Sienega did not file state tax returns that complied with California law. RTC section 18501(a) provides that "[e]very individual taxable under Part 10 (commencing with Section 17001) shall make a return to the Franchise Tax Board, stating specifically the items of the individual's gross income from all sources and the deductions and credits allowable, if the individual" meets certain criteria for the tax year. Cal. Rev. & Tax. Code § 18501(a). RTC section 18621 sets forth certain requirements of form and content, namely that:

any return, declaration, statement, or other document required to be made under any provision of Part 10 . . . shall contain, or be verified by, a written declaration that it is made under the penalties of perjury. Those returns, and all other returns, declarations, statements, or other documents or copies thereof required, shall be in any form as the Franchise Tax Board may from time to time prescribe . . . and shall be filed with the Franchise Tax Board. The Franchise Tax Board shall prepare blank forms for the returns, declarations, statements, or other documents and shall distribute them throughout the state and furnish them upon application. Failure to receive or secure the form does not relieve any taxpayer from making any return, declaration, statement, or other document required.

Cal. Rev. & Tax. Code § 18621. Sienega did not file any document that complied with these requirements, and the faxes do not "purport to be a return." Indeed, in its response, the FTB communicated to Sienega that he had not filed returns. Nor did the FTB indicate that it considered the faxes to be returns.

Second, the faxes were not submitted under penalty of perjury. In fact, Sienega did not sign them at all; they were transmitted by his lawyer. Even though Sienega may have been subject to criminal prosecution if he provided false information, that is not the same as signing a document under penalty of perjury.

Third, although the faxes communicated adjustments to federal taxes, and the FTB issued preliminary assessments, the faxes did not contain enough data to allow complete computation of state tax.

Fourth, nothing in the faxes indicates an "honest and reasonable attempt to satisfy the requirements of tax law." The faxes simply communicate information about the outcome of a federal proceeding.

In short, one of these things is not like the other. Thus, the BAP correctly held that the faxes did not constitute state tax returns under § 523(a)'s hanging paragraph. The BAP's conclusion is in accord with our interpretation of the pre-BAPCPA version of § 523(a)(1)(B). *See In re Jackson*, 184 F.3d 1046, 1051 (9th Cir. 1999) (holding, before BAPCPA added the "equivalent report or notice" clause, that a "report" submitted to the FTB under RTC section 18622(a)'s predecessor statute did not qualify as a "return" under § 523(a)(1)(B)), *superseded by statute*, BAPCPA of 2005, Pub. L. No. 109-8 § 714, 119 Stat. 23, 128–29, *as recognized in In re Berkovich*, 15 F.4th 997, 998 (9th Cir. 2021).

*Berkovich* is not to the contrary, as suggested by Sienega. In *Berkovich*, the BAP's decision, which was adopted by this Court, did not hold that a report submitted pursuant to RTC section 18622(a) satisfies *Beard*. Rather, the BAP and this Court—like the Fourth Circuit in *In re Ciotti*—held that an RTC section 18622(a) report is "similar" to a "return" such that it qualifies as an "equivalent report or notice" under § 523(a)(1)(B), but expressly rejected the argument that a "'report' must meet the definition of a 'return.'" 15 F.4th at 1004–05 (noting that such a reading would render the "or

equivalent report" clause surplusage); *see also In re Ciotti*, 638 F.3d 276, 280–81 (4th Cir. 2011). Similar does not mean the same.

In sum, the BAP correctly concluded that sending faxes was not the equivalent of paying taxes. Therefore, it properly affirmed the holding of the bankruptcy court that the California state taxes that Sienega owed were non-dischargeable in bankruptcy.

**AFFIRMED.**